1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  LISA ROBINSON and KEVIN        No. 2:10-cv-03187-MCE-GGH
    ROBINSON,
12
             Plaintiffs,
13                                 <u>MEMORANDUM & ORDER</u>
        v.
14
    KIA MOTORS AMERICA, INC., a
15  California corporation,

16           Defendant.

17                      ----oo0oo----

18      Through this action, Plaintiffs, Lisa Robinson and Kevin

19  Robinson ("Plaintiffs") allege violations of the Song-Beverly Act

20  and Magnuson-Moss Warranty Act.  Defendant, Kia Motors America,

21  Inc. ("Defendant") now moves for summary adjudication, pursuant

22  to Federal Rule of Civil Procedure 56,[1] on Plaintiffs' claim for

23  punitive civil penalties arising from Defendant's alleged

24  violation of the Song-Beverly Act, California Civil Code § 1793

25  et seq.  For the reasons set forth below, Defendant's motion is

26  denied.

27  _____

28      [1] Unless otherwise noted, all further references to Rule or
    Rules are to the Federal Rules of Civil Procedure.

                              1

**BACKGROUND**

On February 24, 2007, Plaintiffs purchased from Defendant's dealership, Folsom Lake Kia, a new 2007 Kia Sportage. Included in the sale were express warranties on the vehicle pursuant to which Defendant undertook to maintain the vehicle's utility or performance, or provide compensation if Plaintiffs' vehicle failed in such utility or performance. In August 2010, Plaintiffs began having difficulties with the vehicle. Over the next month, the vehicle was subjected to five repair attempts at the Folsom Lake Kia dealership to fix the defect. None of these attempts at repair were successful, and the final invoice dated September 14, 2010 stated in the notes section that Folsom Lake Kia was unable to fix the vehicle in this most recent attempt and that the dealership still did not know what the problem was. (Decl. Mark Romano Ex. 2 at 7.)

On September 17, 2010, Plaintiff Lisa Robinson called Defendant's Customer Assistance Center for the first time to explain her problem with the vehicle. She further explained that she did not want to keep taking the vehicle in for repairs and requested a buyback under the so-called automobile "Lemon Law" codified by California's Song-Berly Act. The customer service agent responded by informing Plaintiff Lisa Robinson that if she wanted to pursue a Lemon Law claim, then she would need to follow the arbitration procedure.

///

///

///

2

1    Shortly thereafter, Plaintiffs received a call from Chris
2  Valenti, another representative for Defendant.  Plaintiff Lisa
3  Robinson again explained to him that she believed the vehicle was
4  a "lemon" and wanted a buyback or replacement vehicle.
5  Mr. Valenti replied that he wanted to schedule a vehicle
6  inspection for October 11, 2010, to which Plaintiffs agreed.  On
7  or about September 30, 2010, Plaintiff Lisa Robinson left a
8  voicemail for Mr. Valenti cancelling the inspection.  In that
9  message, she again reiterated that she did not want to take the
10 vehicle in for another repair, and only wanted a buyback or
11 replacement.  Mr. Valenti returned her call, and, according to
12 Plaintiffs, he informed her that her vehicle was not a "lemon"
13 and that Defendant would not buyback or replace it.  He further
14 stated that Defendant would take no further action towards
15 honoring Plaintiffs' request for a buyback or replacement.
16 Mr. Valenti did, however, offer compensation for Plaintiffs'
17 inconvenience if they brought the vehicle in for inspection.
18    Defendant left Plaintiff Lisa Robinson a voicemail message
19 on October 7, 2010 requesting she call him back, but no further
20 communications between Plaintiffs and any agent of Defendant took
21 place.  Plaintiffs then filed the instant suit.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Rule 56(c)).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  See Rule 56(a) ("A party seeking to recover upon a claim...may...move...for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Rule 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

4

1   If the moving party meets its initial responsibility, the

2   burden then shifts to the opposing party to establish that a

3   genuine issue as to any material fact actually does exist.

4   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

5   585-587 (1986); First Nat'l Bank v. Cities Ser. Co., 391 U.S.

6   253, 288-289 (1968).

7   In attempting to establish the existence of this factual

8   dispute, the opposing party must tender evidence of specific

9   facts in the form of affidavits, and/or admissible discovery

10  material, in support of its contention that the dispute exists.

11  Rule 56(e).  The opposing party must demonstrate that the fact in

12  contention is material, i.e., a fact that might affect the

13  outcome of the suit under the governing law, and that the dispute

14  is genuine, i.e., the evidence is such that a reasonable jury

15  could return a verdict for the nonmoving party.  Anderson v.

16  Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v.

17  Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d

18  347, 355 (9th Cir. 1987).  Stated another way, "before the

19  evidence is left to the jury, there is a preliminary question for

20  the judge, not whether there is literally no evidence, but

21  whether there is any upon which a jury could properly proceed to

22  find a verdict for the party producing it, upon whom the onus of

23  proof is imposed."  Anderson, 477 U.S. at 251 (quoting

24  Improvement Co. v. Munson, 14 Wall. 442, 448 (1872)).

25  ///

26  ///

27  ///

28  ///

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87.  In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. <u>Anderson</u>, 477 U.S. at 255, <u>see also</u> <u>Matsushita</u>, 475 U.S. 587.

**ANALYSIS**

As indicated above, Defendant moves to dismiss Plaintiffs' claims under the Song-Beverly Act, known as California's automobile "Lemon Law."  The Act requires manufacturers of consumer goods containing express warranties to maintain sufficient service and repair facilities to carry out the terms of the warranty.  Cal. Civ. Code, § 1793.2(a)(1).

A plaintiff pursuing an action under the Song-Beverly Act must prove the following: (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle; (2) the vehicle was presented to an authorized representative of the vehicle's manufacturer for repair; and (3) the manufacturer did not repair the nonconformity after a reasonable number of repair attempts.  Cal. Civ. Code. § 1793.2(d); <u>Oregel v. American Isuzu Motors, Inc.</u>, 90 Cal. App. 4th 1094, 1101 (2001) (internal citations omitted).

There are two means by which a plaintiff in a Cal. Civ. Code § 1794 action may recover punitive civil penalties against a defendant who has violated the Song-Beverly Act.  See Jernigan v. Ford Motor Co., 24 Cal. App. 4th 488, 491-92 (1994). Section 1794(c) grants civil penalties to buyers of any type of consumer goods, but only where the defendant willfully violated the Act.  Id.  Section 1794(e) permits civil penalties specifically for buyers of new motor vehicles without requiring a showing of willfulness, unless the manufacturer of the motor vehicle maintains a qualified dispute resolution process.  Id. at 493.

Defendant argues that it is entitled to summary adjudication of Plaintiffs' claims for civil penalties arising out of alleged violations of the Song-Beverly Act because Plaintiffs cannot establish that Defendant knew of any liability under the Act. Defendant argues that Plaintiffs have therefore failed to demonstrate that it willfully failed to comply with the Song-Beverly Act, and so it is not liable for any civil penalty under Cal. Civ. Code § 1794(c).  Defendant further argues that it is not liable for civil penalties under Cal. Civ. Code § 1794(e)(1) because it maintains a qualified third-party dispute resolution process pursuant to Cal. Civ. Code, § 1794(e)(2).

///
///
///
///
///
///

7

**A.   Cal. Civ. Code § 1794(c) - Civil Penalties For Buyers Of All Consumer Goods**

Subsection (c) of 1794 provides civil penalties for consumers of goods who were damaged by the manufacturer's failure to comply with any obligation under the Song-Beverly Act, or under an implied or express warranty.  Cal. Civ. Code § 1794(a). In order to collect civil penalties under subsection (c), the buyer must establish that the defendant's failure to comply with the Act was willful.  The violation Plaintiffs allege is that Defendant was unable to service or repair the vehicle to conform to the applicable express warranties after a reasonable number of attempts pursuant to Cal. Civ. Code § 1793.2(d), and that it declined to replace or buyback the vehicle.

Defendant maintains that it did not willfully violate the Act because it did not know of its obligation to replace or buyback Plaintiffs' vehicle.  Defendant further argues that a violation cannot be willful where it has requested that the customer bring in the vehicle for evaluation or repair. Defendant does not contest at this point Plaintiffs' allegation that a violation of the Act did in fact occur, but only argues that Plaintiffs cannot prove that Defendant actually knew of its obligation and failed to comply in willful disregard of the Act. In support of its contention that it did not act willfully, Defendant relies on <u>Hatami v. Kia Motors Am., Inc.</u>, No. 08-0226, 2009 WL 1396358 (C.D. Cal. Apr. 20, 2009) and <u>Dominguez v. Am. Suzuki Motor Corp.</u>, 160 Cal. App. 4th 53, 60 (2008).  Both <u>Hatami</u> and <u>Dominguez</u>, however, are distinguishable.
///

8

1    Hatami involved many of the same facts as the instant case;

2    the plaintiff allegedly made five attempts to have his vehicle

3    repaired before requesting his car be repurchased, and instead,

4    defendant Kia Motors offered to inspect and repair the vehicle,

5    at which point the plaintiff filed suit.  Hatami, 2009 WL

6    1396358, at *1.  The court in Hatami found that summary

7    adjudication was appropriate for plaintiff's civil penalties

8    claim under subsection (c).  Id. at *5.  The court explained that

9    willful conduct was absent due to both defendant's initial

10   response to inspect the vehicle, and its subsequent offers to buy

11   back the vehicle.  Id.  Because Defendant in this case has not

12   made any offers to repurchase Plaintiffs' vehicle, this Court

13   does not find Hatami to be sufficiently analogous to support

14   summary adjudication.

15       Dominguez, which Defendant also relies upon in support of

16   its contention that a request for an evaluation of the vehicle is

17   not willful conduct, is similarly distinguishable.  In Dominguez,

18   the plaintiff allegedly made five repair attempts and then

19   submitted a written request to the defendant for a buyback.

20   160 Cal. App. 4th at 55-56.  In response, the defendant requested

21   that the plaintiff bring in his vehicle for an inspection.  Id.

22   Significantly, in Dominguez, the defendant noted the reasons for

23   its request to inspect as follows: 1) the repair mechanics were

24   unable to duplicate the reported problem, 2) the excessive

25   mileage on the motorcycle did not indicate that there was a

26   "recurrent problem," and 3) plaintiff brought the motorcycle in

27   for issues unrelated to the alleged problem.  Id. at 56.

28   ///

1  Approximately six weeks after plaintiff's demand, the defendant

2  offered to repurchase the vehicle.  Id. at 59.  The court held

3  that there was no evidence that defendant willfully failed to

4  comply with the Act.  Id. at 59.  Dominguez is distinguishable

5  both because of that defendant's offer to repurchase plaintiff's

6  vehicle, and because that particular request for inspection was

7  predicated on a good faith belief that the Song-Beverly Act did

8  not apply to the alleged problem.  Neither of these facts are

9  present in the instant case.  Accordingly, this Court does not

10 find Dominguez persuasive.

11      A violation of § 1793.2(d)(2) is not willful if the

12 defendant's failure to replace or refund was the result of a good

13 faith and reasonable belief that the facts imposing the statutory

14 obligation were not present.  Kwan v. Mercedes-Benz of N. Am.,

15 Inc., 23 Cal. App. 4th 174, 185 (1994).  This standard does not

16 require the plaintiff to prove the defendant actually knew of its

17 obligation to refund or replace because that requirement would

18 allow manufacturers to escape the penalty by remaining ignorant

19 of the facts.  Id.  "A decision made without the use of

20 reasonably available information germane to that decision is not

21 a reasonable, good faith decision."  Id. at 186.  The Song-

22 Beverly Act requires a manufacturer to maintain service and

23 repair facilities in the state, and so the manufacturer is

24 capable of knowing every failed repair attempt by reading its

25 dealers' service records.  Krotin v. Porsche Cars N. Am., Inc.,

26 38 Cal. App. 4th 294, 303 (1995).

27 ///

28 ///

10

Cal. Civ. Code § 1793.2(d) obligates a manufacturer to offer a
replacement or reimbursement when it is unable to repair the
vehicle in conformity with the express warranty after a
reasonable number of attempts.

The question addressed at this stage is not whether
Defendant was in fact willful and subject to § 1794(c) civil
penalties, but instead, whether a reasonable jury could find that
it acted willfully. <u>Anderson</u>, 477 U.S. at 251-52.  Though
Defendant contends that Plaintiffs only contacted it once to
report the vehicle's defect, Mr. Valenti admitted in his
deposition that he received and reviewed the repair orders, which
noted that the defect had not been fixed.  (Decl. of Mark Romano,
Ex. 4 at 223:1-11.)  Further, in light of <u>Krotin</u>, Defendant is
expected to review its dealers' service records, and so should
have known of the failed attempts to repair the defect.  38 Cal.
App. 4th at 303.  Both Defendant and Mr. Valenti were on notice
of Plaintiffs' multiple attempts to repair the vehicle.

Defendant has provided no authority establishing that its
actions demonstrated the conclusive non-willfulness necessary to
evade liability under Cal. Civ. Code § 1794(c).  To the contrary,
case law in this area is highly fact-specific, and one or two
slight differences between cases can change the outcome.
Plaintiffs' claim for civil penalties under § 1794(c) therefore
raises triable issues of fact for the jury to decide.  Because
the claim is consequently not amenable to summary adjudication,
Defendant's motion as to civil penalties under subsection (c) is
DENIED.
///

11

**B.   Cal. Civ. Code § 1794(e)(1) - Civil Penalties For Buyers Of Motor Vehicles**

The Song-Beverly Act requires a manufacturer of motor vehicles who is unable to service or repair a new vehicle in conformity with applicable express warranties to either promptly replace the vehicle or make restitution after a reasonable number of repair attempts.  Cal. Civ. Code § 1793.2(d)(2).  If the buyer establishes a violation of § 1793.2(d)(2), he or she may recover damages, reasonable attorneys fees and costs, and a civil penalty of up to two times the amount of damages.  Cal. Civ. Code § 1794(e)(1).  A plaintiff may recover civil penalties under subsection(e)(1) where the defendant's violation of the Act was not willful.  <u>Jernigan</u>, 24 Cal. App. 4th at 492.

Subsection (e)(1) calls for the same standard as subsection (c) for an award of civil penalties, except that a finding of willfulness is not required.  <u>See</u> Cal. Civ. Code § 1794(c) and (e)(1).  Subsection (e) was intended to apply to purchases of new motor vehicles only, whereas subsection (c) covers any type of consumer goods as defined in the Act.  <u>See</u> <u>Suman v. BMW of N. Am., Inc.</u>, 23 Cal. App. 4th 1, 6-7 (1994). The only distinction between the analysis contained in subsections (c) and (e)(1), then, is with respect to a finding of willfulness and a more particularized showing that the purchase of a motor vehicle is involved.

///

///

///

///

12

If Plaintiffs' claim under the more rigorous requirements of
subdivision (c) survives for purposes of summary adjudication, as
the Court has already concluded, a reasonable jury could likewise
find that Plaintiffs have also demonstrated the elements
necessary to collect civil penalties under subsection (e), which
relaxes any requirement that Defendant's refusal be willful.

### C.   Cal. Civ. Code § 1794(e)(2) - Qualified Dispute Resolution Process

A buyer of a motor vehicle that cannot be repaired after a
reasonable number of attempts may recover a civil penalty
pursuant to Cal. Civ. Code  § 1794(e)(1) unless the manufacturer
maintains a qualified third-party dispute resolution process.
Cal. Civ. Code § 1794(e)(2).  To be exempted from subsection (e)
civil penalties, the manufacturer's qualified dispute resolution
process must substantially comply with Cal. Civ. Code § 1793.22.
Id.  Cal. Civ. Code § 1793.22(d) provides nine conditions that a
third-party dispute resolution process must satisfy in order to
be considered "qualified" for the purposes of § 1794(e)(2)
exemption.

Defendant participates in the Better Business Bureau
Autoline program ("BBB").  Defendant maintains that BBB is
certified by the State of California as an Arbitration Program
for any Song-Beverly claims against certain automotive
manufacturers.  Defendant, therefore, argues that since the
program "...is so certified, it meets the requirements of the
statute."  (Def.'s Mot. for Summary Adj. at 6.)
///

13

Certification of a dispute resolution program, however, fulfills just one of nine conditions required to be considered "qualified" in satisfaction of § 1794(e)(2). Thus, certification of BBB does not necessarily lead to the conclusion that BBB complies with the requirements of the § 1794(e)(2) exemption. Defendant has failed to address the remaining eight conditions for qualification in its Motion for Summary Adjudication. Instead, Defendant relies on Mr. Valenti's conclusion that BBB complies with the requirements of the Song-Beverly Act.

A declaration used to support or oppose a motion must be made on personal knowledge. Rule 56(c)(4). In sole support of its stated contention that participation in the BBB process exempts it from subsection (e) civil penalties, Defendant points to Christopher Valenti's declaration at ¶ 13. Mr. Valenti's declaration attests that BBB is certified by the State of California, and "complies with the requirements of the Song-Beverly Act." (Decl. Christopher Valenti ¶ 13.) Plaintiffs dispute this declaration arguing, based on statements made in his deposition on March 8, 2011, that Mr. Valenti does not have personal knowledge of those facts. In this deposition, Mr. Valenti was asked "Is anything contained in paragraph 13 actually stated from your personal knowledge," to which he responded, "No." (Decl. of Mark Romano, Ex. 4 at 226:1-4.) Because declarations used in support of a motion for summary adjudication must be made on personal knowledge, Mr. Valenti's statement in paragraph 13 is an insufficient basis on which to grant such a motion.

///

1  Defendant has offered no other evidence or case law to support

2  its contention that Plaintiffs cannot prevail on a claim for

3  subsection (e) civil penalties.

4      Beyond mere conclusory statements, Defendant has not

5  established that its participation in the BBB dispute resolution

6  process exempts it from civil penalties pursuant to

7  subsection (e).  Defendant's Motion for Summary Adjudication as

8  to civil penalties under Cal. Civ. Code § 1794(e) is DENIED.

9

10                          **CONCLUSION**

11

12      For the reasons stated above, Defendant's Motion for Summary

13  Adjudication (ECF No. 7) is DENIED.[2]

14      IT IS SO ORDERED.

15  Dated: April 14, 2011

16

17

18  _____
    MORRISON C. ENGLAND, JR.

19  UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27      [2] Because oral argument will not be of material assistance,
    the Court ordered this matter submitted on the briefing.  E.D.
28  Cal. Local Rule 230(g).

                                15