1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8   LISA ROBINSON, et al.,

9              Plaintiffs,                    CIV-S-10-3187-MCE GGH

10        vs.

11

12  KIA MOTORS AMERICA, INC.,

           Defendant.                    ORDER
13  _____/

14        Previously pending on this court's law and motion calendar for May 5, 2011, was

15  plaintiffs' motion to quash three subpoenas issued to Pacific Bell for plaintiffs' telephone

16  records.  Steve Mikhov appeared for plaintiffs.  Jason Welch appeared for defendant Kia Motors,

17  Inc. ("Kia").[1]  After reviewing the papers and hearing oral argument, the court now issues the

18  following order.

19  BACKGROUND

20        Plaintiffs Lisa and Kevin Robinson purchased a Kia Sportage in 2007, and claim

21  that defendant failed to repair it in 2010, despite a reasonable number of attempts.  Plaintiffs

22  allege that Kia then refused to repurchase the vehicle in violation of California's Song-Beverly

23  Act.  The claims are for violations of the Song-Beverly Act and the federal Magnuson-Moss

24  Warranty Act.  Plaintiffs seek damages, rescission, and restitution.

25  _____

26        [1] Non-party Pacific Bell did not file a response.

1    Defendant subpoenaed plaintiffs' telephone records from Pacific Bell pursuant to

2    Fed. R. Civ. P. 45 in order to determine whether Kia received several calls from plaintiff Lisa

3    Robinson regarding her concerns about the car during the period from August to November,

4    2010, as she alleges.  The first subpoena was served on April 5, 2011, seeking the records for Mr.

5    and Mrs. Robinson's phone number, to be produced on May 9, 2011.  No one disputes that this

6    subpoena was properly signed. The second and third subpoenas were issued on April 6, 2011,

7    and seek records for the phone number under Mrs. Robinson's name, and Mr. Robinson's name,

8    respectively, and seeking production on April 27, 2011.  Plaintiffs allege that these subpoenas

9    were not signed by a judicial officer.

10   DISCUSSION

11    California takes the privacy rights of its citizens seriously, especially where

12   information is sought concerning consumer activities.  The statute expressly references the

13   records sought here.  In order to obtain such information, the seeker must follow strict

14   procedures.  The information here is protected from disclosure by California law, Cal. Code Civ.

15   P. § 1985.3, which provides in pertinent part:

16    (b) Prior to the date called for in the subpoena duces tecum for the
       production of personal records, the subpoenaing party shall serve
17    or cause to be served on the consumer whose records are being
       sought a copy of the subpoena duces tecum, of the affidavit
18    supporting the issuance of the subpoena, if any, and of the notice
       described in subdivision (e), and proof of service as indicated in
19    paragraph (1) of subdivision (c). This service shall be made as
       follows:
20                                        ****
       (c) Prior to the production of the records, the subpoenaing party
21    shall do either of the following:

22    (1) Serve or cause to be served upon the witness a proof of
       personal service or of service by mail attesting to compliance with
23    subdivision (b).

24    (2) Furnish the witness a written authorization to release the
       records signed by the consumer or by his or her attorney of record.
25    The witness may presume that any attorney purporting to sign the
       authorization on behalf of the consumer acted with the consent of
26    the consumer, and that any objection to release of records is

2

waived.

\*\*\*\*

(f) *A subpoena duces tecum for personal records maintained by a telephone corporation which is a public utility, as defined in Section 216 of the Public Utilities Code, shall not be valid or effective unless it includes a consent to release, signed by the consumer whose records are requested, as required by Section 2891 of the Public Utilities Code.*

\*\*\*\*

(k) Failure to comply with this section shall be sufficient basis for the witness to refuse to produce the personal records sought by a subpoena duces tecum.

The threshold issue is the extent to which this formal statement of California policy should be respected by federal courts.  Assuming initially that the California statute encompasses a mere "privilege" not to produce certain information, the undersigned is bound by well established cases, including his own, finding in mixed federal and state claim cases pending in federal court, that federal privilege law will apply.  Fed. R. Ev. 501 and 1974 Advisory Committee Notes for this Rule; see also, Lewis v. United States, 517 F.2d 236, 237 (9th Cir. 1975); Heathman v USDC (C.D. Cal.), 503 F.2d 1032, 1034 (9th Cir. 1974).

In cases presenting federal claims concurrently with state law claims, courts disagree about the extent to which state privilege law remains applicable in discovery disputes. The Supreme Court explicitly noted in Jaffee that the issue is unsettled.  Jaffe v. Redmond, 518 U.S. 1, 15 n. 15, 116 S.Ct. 1923, 1931 (1996) (noting disagreement concerning the proper rule in cases in which both federal and state claims are asserted in federal court).  This court has found that in mixed federal and state claim cases, although federal law is ultimately binding, state privilege law which is consistent with its federal equivalent may significantly inform in applying privilege law to discovery disputes.  See Pagano v. Oroville Hospital, 145 F.R.D. 683, 687 (E.D.Cal.1993); Martinez v. City of Stockton, 132 F.R.D. 677, 681-83 (E.D. Cal.1990); Cook v. Yellow Freight, 132 F.R.D. 548 (E.D. Cal.1990). Other courts, however, disagree.  See, e.g., Jackson v. County of Sacramento, 175 F.R.D. 653, 654 (E.D. Cal.1997) (stating that

////

1  Pagano/Martinez/Cook have been overruled).[2]  The other courts in this Circuit seemingly have

2  overlooked binding precedent: "In determining the federal law of privilege in a federal question

3  case, absent a controlling statute, a federal court may consider state privilege law."  Lewis, 517

4  F.2d at 237.

5          However, a good argument could be made that specific state statutes precluding,

6  or greatly limiting, the production of information are not simply privilege statutes, but rather

7  substantive policy statutes.  Such statutes may govern the activities of state citizens, not only in

8  litigation, but in everyday life.  One can validly question the presumption that all such statutes

9  are automatically preempted by federal law because the opposite presumption is generally in

10 effect.  Preemption analysis proceeds from "the assumption that the historic police powers of the

11 States were not to be superseded by the Federal Act unless that was the clear and manifest

12 purpose of Congress."  Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 605, 111 S.Ct.

13 2476 1991).  Indeed, in the mirror image situation where the state is requiring the disclosure of

14 information whose disclosure is limited by federal law, a preemption analysis is utilized.  See Air

15 Cond. And Refrig etc. v. Energy Resources Conserv., 410 F.3d 492, 497 (9th Cir. 2005).  The

16 undersigned is concerned that a generally worded federal rule of evidence concerning "privilege"

17 can be seemingly utilized to disregard a state sovereign's public policy in every case.

18          That being said, the undersigned will utilize a privilege analysis for two reasons.

19

20          [2] Jackson is, respectfully, simply wrong in its proposition that Jaffe overruled Pagano,
   Martinez, and Cook. For starters, the cases were not referenced by Jaffe. More importantly, Jaffe
21 itself expressly noted the disagreement on the extent to which federal privilege law was informed
   by its state law counterpart, and expressly held that it would not rule on the issue. "We note that
22 there is disagreement concerning the proper rule in cases such as this in which both federal and
   state claims are asserted in federal court and relevant evidence would be privileged under state
23 law but not under federal law....we express no opinion on the matter."  Jaffe, 518 U.S. at 15
   (n.15), 116 S.Ct. at 1931.  Jackson is based on the questionable premise that the Supreme Court's
24 determination not to consider an issue impliedly overrules cases discussing the issue.  The cases
   that have followed Jackson's erroneous interpretation of Jaffe, seemingly without reference to
25 footnote 15 in Jaffe, are likewise flawed in this respect.  See Folb v. Motion Picture Indus. Etc.,
   16 F.Supp.2d 1164 (C.D.Cal.1998); Humphreys v. Regents of University of Cal., 2006 WL
26 335275 (N.D. Cal. 2006).

1   The resisting party here, plaintiff, does not argue a preemption theory, and the court is unwilling

2   to embark on such a unique course without a party rowing for such a result.  Also, the state

3   statute here appears within the Cal. Code of Civil Procedure and is involved primarily with

4   litigation subpoenas of consumer information.  See Corser v. County of Merced, No. 1:05-CV-

5   00985, 2006 WL 2536622, at *3 (E.D. Cal. Aug. 31, 2006) (in analyzing this particular state

6   statute the court assumed that § 1985.3 created a privilege, and concluded that such a privacy

7   privilege did not apply because the case concerned a question of federal law, 42 U.S.C. § 1983).

8   Moreover, the state statute at issue also does not totally preclude disclosure of consumer

9   information, including telephone information; it sets procedures for its ultimate disclosure.[3]  The

10  undersigned now turns to use of federal privacy privilege law.

11          Pagano described useful criteria to judge whether a privacy interest is unduly

12  infringed.  The following factors must be considered: "(1) the probable encroachment of the

13  individual's privacy right if the contested action is allowed to proceed, and the magnitude of that

14  encroachment; (2) whether the encroachment of the privacy right would impact an area that has

15  traditionally been off limits for most regulation; (3) whether the desired information is available

16  from other sources with less encroachment of the privacy right; (4) the extent to which the

17  exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the

18  interests of society at large encourage a need for the proposed encroachment." Pagano, 145

19  F.R.D. at 698–699.

20          Kia argues that plaintiffs' phone records are relevant and discoverable because

21  plaintiff Lisa Robinson alleges that she made several phone calls to Kia to complain about

22  problems with the vehicle.  (Lisa Robinson Decl., Dkt. #20-4).  Kia contends that the subpoena is

23  narrowly tailored to cover the four month time period set forth in this declaration.  Kia claims to

24

25          [3] It is unclear whether a court could order the telephone information without the consent
    of a party/consumer, or order the party/consumer to consent, or take some punitive action for the
26  failure of the party/consumer to consent.

1 need the records to pinpoint dates and times of the phone calls.  Kia's cited case, <u>Darosa v.</u>

2 <u>Kaiser Foundation Health Plan, Inc.</u>, 2008 WL 4790726, at *1 (N.D. Cal. 2008), reasoned that

3 "any privacy interest [plaintiff] might have is vastly reduced as he initiated this lawsuit."

4       The declarations of plaintiff Lisa Robinson and Christopher Valenti, Regional

5 Consumer Affairs Analyst for Kia Motors America filed in a previous motion, are consistent in

6 referencing the same dates of telephone calls between the parties, September 17, 24, and 30,

7 2010.  The only possible inconsistency is that Valenti's declaration refers to a final phone

8 message left for Lisa Robinson on October 7, 2010, requesting a callback, but Ms. Robinson's

9 declaration does not.  Phone logs kept by Kia's Consumer Assistance Center which were

10 submitted by plaintiff at the hearing, indicate the same dates as verified by both Robinson and

11 Valenti.  These logs also reflect the times of the phone calls.  Thus, privacy concerns related to

12 existence of the phone calls are much reduced as the information is known for the most part

13 already.

14       The telephone calls are pertinent to this case as reflected by the previous

15 utilization of such calls in a dispositive motion, i.e., defendant believes it important to confirm

16 the contacts of the parties in this commercial property warranty/defect case.  Defendant desires to

17 further confirm or authenticate the existence of such calls for trial purposes.  The undersigned

18 agrees that the telephone calls are sufficiently relevant to order production and that the privacy

19 interests involved are rather slight in the context of this case.  Analyzing all the <u>Pagano</u> factors,

20 the undersigned finds that they weigh in favor of disclosure.

21 ////

22 ////

23 ////

24 ////

25 ////

26 ////

1   CONCLUSION

2           Good cause appearing therefor, IT IS ORDERED that: plaintiffs' motion to quash

3   subpoenas, filed April 21, 2011, (docket #25), is denied.[4]

4   DATED: June 13, 2011

                                                /s/ Gregory G. Hollows
5                                               _____
                                                GREGORY G. HOLLOWS
6                                               U. S. MAGISTRATE JUDGE

7   Robinson3187.R45.wpd

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   _____

25           [4] Plaintiffs raised a point that some of the subpoenas at issue were not signed as required
     by Fed. R. Civ. P. 45(a)(3).  To the extent that defendant's counsel did not sign the subpoenas at
26   issue, new signed subpoenas must be served.